### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

PATRICE C. FLEMING,

                Plaintiff,

v.                                  Case No. 3:19-cv-1466-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

                Defendant.

_____

## <u>OPINION AND ORDER</u>[1]

## I.   Status

    Patrice C. Fleming ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of a "knee condition," a torn rotator cuff, carpal tunnel in both hands, and high blood pressure. <u>See</u> Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed April 21, 2020, at 73-74, 84-85, 208 (capitalization and emphasis omitted). Plaintiff filed an application for DIB on

---

[1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. <u>See</u> Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed April 21, 2020; Reference Order (Doc. No. 15), entered April 23, 2020.

December 6, 2016,[2] alleging an onset disability date of September 12, 2016. Tr. at 168. The application was denied initially, Tr. at 72, 73-82, 83, upon reconsideration, Tr. at 84-95, 96, 97, and upon "informal remand," Tr. at 98; see Tr. at 709-23, 724.

On January 8, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 35-71. Plaintiff was fifty-four years old at the time of the hearing. Tr. at 41. On March 6, 2019, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 15-25.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. See Tr. at 165. The Appeals Council received additional evidence in the form of a brief authored by Plaintiff's counsel and medical records from Plaintiff's treating orthopedic physician (spanning January 28, 2019 to March 11, 2019). Tr. at 2, 4, 5; see Tr. at 296-97 (brief); Tr. at 31-34 (medical records).[3] On October 30, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the

---

[2]      Although actually completed on December 6, 2016, see Tr. at 168, the protective filing date of the application is listed elsewhere in the administrative transcript as November 30, 2016, see, e.g., Tr. at 73.

[3]      The Appeals Council did not designate the medical records as an exhibit. See Tr. at 2.

Commissioner. On December 20, 2019, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes two arguments: 1) the ALJ "erred in relying primarily on the opinions of the state agency [medical consultants] in formulating [Plaintiff's] residual functional capacity [('RFC')] even though their opinions were issued prior to [Plaintiff's] left shoulder decline that was accelerated by the need for crutches and a walker after her right total knee replacement in January 2018"; and 2) "[t]he Appeals Council erred in failing to remand this matter to the [ALJ] for consideration of new and material evidence": specifically, the medical records from Plaintiff's orthopedic physician that in part show Plaintiff "underwent left shoulder reconstructive surgery five weeks before the [ALJ] denied her case." Plaintiff's Brief (Doc. No. 17; "Pl.'s Br."), filed June 22, 2020, at 8, 13 (emphasis omitted); see also Pl.'s Br. at 1. On September 21, 2020, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 17-25. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since September 12, 2016, the alleged onset date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: reconstructive surgeries of weightbearing joints; disorders of the muscle, ligament, and fascia; diabetes mellitus; essential

---

[4]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

hypertension; obesity; carpal tunnel syndrome, status-post surgery; hyperlipidemia; and thyroid disorder." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 19 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except [Plaintiff] can frequently reach overhead to the left. She can handle and finger frequently. [Plaintiff] can climb ramps and stairs occasionally but never climb ladders, ropes, or scaffolds; she can stoop occasionally, but never kneel, crouch, or crawl. [Plaintiff] can occasionally be exposed to vibration.

Tr. at 19 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is capable of performing past relevant work as a Grocery Clerk . . . ." Tr. at 23 (emphasis omitted). The ALJ then made alternative findings at step five. Tr. at 23-25. After considering Plaintiff's age ("52 years old . . . on the alleged disability date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform," such as "Ticket Seller," "Office Helper," and "Parking Lot Cashier." Tr. at 23-24. The ALJ concluded Plaintiff "has not been under a disability . . . from September 12,

2016[ ] through the date of th[e D]ecision." Tr. at 25 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against

the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

As noted above, Plaintiff challenges the ALJ's reliance on the opinions of the state agency medical consultants and the Appeals Council's failure to remand the matter for consideration of new evidence. These arguments are addressed in turn below.

## A.   Opinions of State Agency Medical Consultants

### 1.   Parties' Arguments

Plaintiff contends the ALJ erred in giving great weight to the opinions of the state agency medical consultants: James G. Brown Ph.D., dated April 14, 2017; Bettye Stanley, D.O., dated April 15, 2017; Ryan Mendoza, Ph.D., dated April 12, 2018; and Jay Shaw, M.D., dated April 18, 2018. <u>See</u> Pl.'s Br. at 11-13;[5] Tr. at 89-90 (Dr. Brown); Tr. at 90-95 (Dr. Stanley); Tr. at 709-23 (Dr. Mendoza); Tr. at 724 (Dr. Shaw). According to Plaintiff, these opinions "were based on [Plaintiff's] left shoulder's status prior to 2018" because none of the state agency medical consultants had the opportunity to review "2018 progress notes." Pl.'s Br. at 9; <u>see also</u> <u>id.</u> at 11.

---

[5]     Although Plaintiff does not name Dr. Brown or Dr. Mendoza in her Brief, she faults the ALJ's assessment of the state agency medical consultants' opinions, and as summarized below, the ALJ assessed the opinions of all four state agency medical consultants.

Responding, Defendant asserts that "[n]othing in the evidence before the ALJ that was not before the state agency [medical consultants] undermines the limitations opined by the state agency [medical consultants] or undermines the limitations included in the RFC." Def.'s Mem. at 7 (citation omitted). According to Defendant, "the subsequent notes indicate some complaints of pain, but control of the pain for months at a time with injections and full or nearly full range of motion." Id. (citation omitted).

## 2.   **Applicable Law**[6]

The Regulations establish a hierarchy among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 404.1527. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a

---

[6]      On January 18, 2017, the SSA revised the Rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844-01). Because Plaintiff filed her claim before that date, the undersigned cites the Rules and Regulations that are applicable to the date the claim was filed.

[7]      "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

source who examined the claimant than one who has not." <u>Schink v. Comm'r of Soc. Sec.</u>, 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." <u>Id.</u> at 1260 (citing <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. § 404.1527(c)(2)-(5); <u>see also</u> 20 C.F.R. § 404.1527(f); <u>Walker v. Soc. Sec. Admin., Comm'r</u>, 987 F.3d 1333, 1338 (11th Cir. 2021); <u>McNamee v. Soc. Sec. Admin.</u>, 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

An ALJ is required to consider every medical opinion. <u>See</u> 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any

physician when the evidence supports a contrary conclusion," <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); <u>see also</u> 20 C.F.R. § 404.1527(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz</u>, 825 F.2d at 279); <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).

### 3.  Analysis

After summarizing the evidence of record, <u>see</u> Tr. at 20-23, the ALJ stated he gave "great weight" to the opinions of Dr. Brown and Dr. Stanley, finding that they were "consistent with and supported by subsequent opinions" from Dr. Mendoza and Dr. Shaw. Tr. at 22-23.[8] The ALJ also gave "great weight" to Dr. Mendoza's and Dr. Shaw's opinions. Tr. at 23.

The undersigned finds no error in the ALJ's assessment of the above opinions. The Decision makes clear that the ALJ did not rely solely on the opinions of the state agency medical consultants and that he considered the evidence as a whole. The ALJ discussed the evidence of record—including evidence postdating the opinions—and permissibly found that the state agency

---

[8]     The ALJ did not refer to the state agency medical consultants by name, but he cited the exhibits containing their opinions. Tr. at 22 (citing Exhibit 4A); Tr. at 84-95 (Exhibit 4A, containing the opinions of Dr. Brown and Dr. Stanley); Tr. at 23 (citing Exhibits 13F and 14F); Tr. at 709-723 (Exhibit 13F, containing the opinions of Dr. Mendoza); Tr. at 724 (Exhibit 14F, containing the opinions of Dr. Shaw).

medical consultants' opinions were consistent with the evidence. Tr. at 20-23; see Oldham, 660 F.2d at 1084. The evidence postdating the opinions does not undermine the substantial evidence supporting the ALJ's Decision. See, e.g., Tr. at 868 (March 2018 treatment note indicating Plaintiff had full range of motion "without restriction" in her cervical spine and her "[l]eft shoulder exam identifies mild weakness in her rotator cuff exam but this is minimal, 4+/5");[9] Tr. at 867 (September 2018 treatment note indicating that Plaintiff had been "com[ing] in intermittently for cortisone injections" for her left shoulder and that "[t]he last one was in March[ and] lasted up until 2 months ago"). To the extent Plaintiff relies on her subjective symptoms to argue the ALJ's assessment of the state agency medical consultants' opinions is not supported by substantial evidence, see Pl.'s Br. at 11-13, the ALJ found that Plaintiff's subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record," Tr. at 20, and Plaintiff does not challenge this finding.

## B. Appeals Council Evidence

### 1. Parties' Arguments

Plaintiff contends the ALJ erred in declining to remand the matter to the ALJ for consideration of new evidence (the new medical records from Plaintiff's treating orthopedic physician) that was in "clear conflict with the ALJ's

---

[9]       The March 2018 treatment note postdates only Dr. Brown's and Dr. Stanley's opinions.

assumption [ ]that [Plaintiff's] left shoulder condition was under good control[.]" Pl.'s Br. at 15. Responding, Defendant argues the Appeals Council appropriately declined to remand the matter because the evidence submitted to the Appeals Council would not have "changed the administrative result." Def.'s Mem. at 9.

### 2. Applicable Law

When the Appeals Council is presented with evidence that was not before the ALJ, the Appeals Council must consider the evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). In addition, a claimant must show good cause for submitting new evidence to the Appeals Council. See 20 C.F.R. § 404.970(b).

Evidence may be chronologically relevant even if it postdates the ALJ's decision. See Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1322 (11th Cir. 2015). In Washington, for instance, the United States Court of Appeals for the Eleventh Circuit held that an examining psychologist's opinions were chronologically relevant "even though [the psychologist] examined [the claimant approximately seven] months after the ALJ's decision." Id. This was because the psychologist reviewed the claimant's treatment records from the period before the ALJ's decision; because the claimant told the psychologist he

had suffered from the conditions at issue "throughout his life" (which obviously would include the relevant time period); and because there was "no assertion or evidence" that the claimant's condition worsened "in the period following the ALJ's decision." <u>Id.</u>

In <u>Stone v. Soc. Sec. Admin.</u>, 658 F. App'x 551, 553 (11th Cir. 2016), on the other hand, the Court found that newly submitted medical records were not chronologically relevant. In doing so, the Court observed that the circumstances were "significantly different" from those in <u>Washington</u> because the new records in <u>Stone</u> "demonstrate[d] a worsening" of the relevant symptoms after the ALJ's decision. <u>Id.</u> at 554. Similarly, in <u>Hargress v. Soc. Sec. Admin., Comm'r</u>, 883 F.3d 1302, 1309-10 (11th Cir. 2018), the Court found that progress notes postdating the ALJ's decision did "not relate to the period before the ALJ's . . . decision" and "nothing in these new medical records indicates the doctors considered [the claimant's] past medical records or that the information in them relates to the period at issue, which materially distinguishes this case from <u>Washington</u>." <u>Hargress</u>, 883 F.3d at 1309-10. Further, the Court found that a treating physician's opinion postdating the ALJ's decision was not chronologically relevant because, even though the physician opined that the limitations dated back to 2013 (prior to the ALJ's decision), "nothing in the form [completed by the physician] or any other documents indicated that [the physician] evaluated [the claimant's] past medical records when forming that

opinion," and the physician "did not treat [the claimant] in 2013." Id. at 1310.

At the end of the day, although the Appeals Council is "not required to give a . . . detailed explanation or to address each piece of new evidence individually," id. at 1309 (citing Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 784 (11th Cir. 2014)), if the Appeals Council "erroneously refuses to consider evidence, it commits legal error and remand is appropriate," Washington, 806 F.3d at 1320.[10]

### 3.   Analysis

In requesting review of the Decision by the Appeals Council, Plaintiff submitted medical records from Plaintiff's treating orthopedic physician: a January 28, 2019 surgery report and two follow-up treatment notes (dated March 11, 2019 and February 11, 2019). See Tr. at 2, 31-34.[11] The Appeals

---

[10]   By contrast, if the Appeals Council actually considers evidence first presented to it but denies review, different standards apply. If a claimant challenges the Appeals Council's denial in that instance, a reviewing court must determine whether the new evidence renders the denial of benefits erroneous. See Mitchell, 771 F.3d at 784-85 (citing Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007)); see also Coleman v. Comm'r of Soc. Sec., 454 F. App'x 751, 754 (11th Cir. 2011) (citation omitted) (noting that "[t]he Appeals Council may deny review if the new evidence does not show the ALJ's decision to be erroneous"). In other words, a claimant seeking remand under sentence four of 42 U.S.C. § 405(g), "must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." Timmons v. Comm'r of Soc. Sec., 522 F. App'x 897, 902 (11th Cir. 2013) (unpublished) (citing Ingram, 496 F.3d at 1266-67; see also Mitchell, 771 F.3d at 785.

[11]   In her Brief, Plaintiff initially states she submitted to the Appeals Council "several months of progress notes and a left shoulder reconstructive surgery report dated just five weeks before the [Decision]." Pl.'s Br. at 13. However, the administrative transcript, as well as Plaintiff's discussion of the evidence in her Brief, shows that she submitted only two treatment notes and the surgery report. See Tr. at 2, 31-34; Pl.'s Br. at 14.

Council found that "this evidence does not show a reasonable probability that it would change the outcome of the [D]ecision," Tr. at 2, and evidently declined to consider it.

Upon review, the undersigned agrees with the Appeals Council that there is no reasonable probability that the new medical records would change the outcome of the Decision. The surgery report merely describes the surgery performed on January 28, 2019. See Tr. at 33-34. The February 2019 treatment note indicates that Plaintiff was "[d]oing well without issues" and that her "[r]ange of motion [was] limited as expected." Tr. at 32. The March 2019 treatment note also states Plaintiff was "doing well" and "ha[d] no real complaints," other than "still [having] some issues sleeping for the most part." Tr. at 31. According to the note, "[t]his has been pretty much the way it has been for the last few weeks." Tr. at 31. Plaintiff also reported "a lot of posterior pain due to capsulitis," but Plaintiff's capsulitis was found to be moderate. Tr. at 31. Plaintiff was given "weight restrictions of no more than 3 pounds," offered a "corticosteroid injection in the posterior capsule to help with capsulitis," and "[i]nstructed on icing techniques and modification of activity." Tr. at 31. There is no indication that the weight restriction was a long-term one. Accordingly, the Appeals Council did not err in declining to remand the matter to the ALJ for consideration of the new medical records.

## V.   Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 19, 2021.

_____
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record